Richard Smith
Savannah Rose
SMITH & LOWNEY, PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TWIN HARBORS WATERKEEPER,       )
                                )
                     Plaintiff, )
                                )
v.                              )
                                )          COMPLAINT
BWC TERMINALS LLC,              )
                                )
                    Defendant.  )
                                )
                                )
_____ )

## I.      INTRODUCTION

1.      This action is a citizen suit brought under Section 505 of the Clean Water Act ("CWA") as amended, 33 U.S.C. § 1365. Plaintiff, Twin Harbors Waterkeeper ("Twin Harbors"), seeks a declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including attorneys' and expert witnesses' fees, for Defendant BWC Terminals LLC's ("BWC") repeated and ongoing violations of Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, and the terms and conditions of its National Pollutant Discharge Elimination System ("NPDES") permit authorizing certain stormwater discharges of pollutants from BWC's Hoquiam, Washington facility to navigable waters.

COMPLAINT - 1

## II.    JURISDICTION AND VENUE

2.    The Court has subject matter jurisdiction over Twin Harbors' claims under Section 505(a) of the CWA, 33 U.S.C. § 1365(a). Sections 309(d) and 505(a) and (d) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a) and (d), authorize the relief Twin Harbors requests.

3.    Under Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), Twin Harbors notified BWC of Defendant's violations of the CWA and of Twin Harbors' intent to sue under the CWA by letter dated and postmarked January 18, 2022 ("Notice Letter"). A copy of the Notice Letter is attached to this complaint as Exhibit 1. The allegations in the Notice Letter are incorporated herein by this reference. In accordance with section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A) and 40 C.F.R. § 135.2(a)(1), Twin Harbors notified the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region 10, the Director of the Washington Department of Ecology ("Ecology"), and BWC's registered agent of its intent to sue BWC by mailing copies of the Notice Letter to these individuals on January 18, 2022.

4.    At the time of the filing of this Complaint, more than sixty days have passed since the Notice Letter and copies thereof were issued in the manner described in the preceding paragraph.

5.    The violations complained of in the Notice Letter are continuing and/or are reasonably likely to re-occur.

6.    At the time of the filing of this Complaint, neither the EPA nor Ecology has commenced any action constituting diligent prosecution to redress the violations alleged in the Notice Letter.

7.    The source of the violations complained of is in Grays Harbor County, Washington, within the Western District of Washington, and venue is therefore appropriate in

COMPLAINT - 2

the Western District of Washington under Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), and 28 U.S.C. § 1391(b).

## III.   PARTIES

8.      Twin Harbors is suing on behalf of itself and its members.

9.      Twin Harbors is a non-profit corporation organized under the laws of the state of Washington. Twin Harbors is dedicated to protecting and preserving the environment of Washington State, especially the quality of its waters. Twin Harbors is a membership organization and has at least one member who is injured by BWC's violations.

10.      Twin Harbors has representational standing to bring this action. Twin Harbors' members are reasonably concerned about the effects of discharges of pollutants, including stormwater from BWC's facility, on water quality and aquatic species and wildlife that Twin Harbors' members observe, study, use, and enjoy. Twin Harbors' members are further concerned about the effects of discharges from BWC's facility on human health. In addition, discharges from BWC's facility lessen Twin Harbors' members' aesthetic enjoyment of nearby areas. Twin Harbors has members who live, work, fish, and recreate around or use Grays Harbor which is affected by BWC's discharges. Twin Harbors' members' concerns about the effects of BWC's discharges are aggravated by BWC's failure to record and timely report information about its discharges and pollution controls in a timely manner. The recreational, scientific, economic, aesthetic, and/or health interest of Twin Harbors and its members have been, are being, and will be adversely affected by BWC's violations of the CWA. The relief sought in this lawsuit can redress the injuries to these interests.

11.      Twin Harbors has organizational standing to bring this action. Twin Harbors has been actively engaged in a variety of educational and advocacy efforts to improve water quality and to address sources of water quality degradation in the waters of Western Washington,

COMPLAINT - 3

including Grays Harbor. As detailed herein and in the Notice Letter, BWC has failed to comply with numerous requirements of its NPDES permit including completing corrective actions, compliance with water quality standards, monitoring, recordkeeping, and reporting requirements. As a result, Twin Harbors is deprived of information necessary to properly serve its members by providing information and taking appropriate action to advance its mission. Twin Harbors' efforts to educate and advocate for greater environmental protection, and to ensure the success of environmental restoration projects implemented for the benefit of its members are also obstructed. Finally, Twin Harbors and the public are deprived of information that influences members of the public to become members of Twin Harbors, thereby reducing Twin Harbors' membership numbers. Thus, Twin Harbors' organizational interests have been adversely affected by BWC's violations. These injuries are fairly traceable to BWC's violations and are redressable by the Court.

12.    BWC is a corporation authorized to conduct business under the laws of the state of Washington.

13.    BWC owns and operates a bulk liquid storage terminal located at or about 3128 Port Industrial Rd, Hoquiam, WA 98550-4211 (referred to herein as the "facility").

## IV.    LEGAL BACKGROUND

14.    Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants by any person, unless in compliance with the provisions of the CWA. A discharge of a pollutant from a point source to waters of the United States without authorization by a NPDES permit, issued under Section 402 of the CWA, 33 U.S.C. § 1342, is prohibited.

15.    The state of Washington has established a federally approved state NPDES program administered by Ecology. Wash. Rev. Code § 90.48.260; Wash. Admin. Code ch. 173-

COMPLAINT - 4

220. This program was approved by the Administrator of the EPA pursuant to Section 402(b) of the CWA, 33 U.S.C. § 1342(b).

16.     Under Section 402 of the CWA, 33 U.S.C. § 1342, Ecology has repeatedly issued Industrial Stormwater General Permits, most recently on November 20, 2019, effective January 1, 2020, and set to expire December 31, 2024 (the "2020 Permit"). The previous permit was issued December 3, 2014, became effective January 2, 2015, and expired December 31, 2019 (the "2015 Permit"). The 2015 Permit and 2020 Permit (collectively, "the Permits"), contain substantially similar requirements and authorize those that obtain coverage thereunder to discharge stormwater associated with industrial activity, a pollutant under the CWA, and other pollutants contained in the stormwater to waters of the United States subject to certain terms and conditions.

17.     The Permits impose certain terms and conditions on those covered thereby, including requirements for monitoring and sampling of discharges, reporting and recordkeeping requirements, and restrictions on the quality of stormwater discharges. To reduce and eliminate pollutants in stormwater discharges, the Permits require, among other things, that permittees develop and implement best management practices ("BMPs") and a Stormwater Pollution Prevention Plan ("SWPPP"), and apply all known and reasonable methods of prevention, control, and treatment ("AKART") to discharges. The specific terms and conditions of the Permits are described in detail in the Notice Letter, attached hereto as Exhibit 1 and incorporated herein by this reference.

## V.     FACTS

18.     Ecology granted BWC coverage for the facility under the 2015 Permit under Permit Number WAR306512. Ecology granted subsequent coverage under the 2020 Permit under the same permit number, WAR306512.

COMPLAINT - 5

19.     BWC discharges stormwater and pollutants associated with industrial activity to Grays Harbor.

20.     BWC's facility is engaged in industrial activities including the transportation and storage of bulk liquids such as methanol, magnesium oxide, among others and is approximately 16 acres. BWC's facility has multiple distinct points of discharge where stormwater and other pollutants leave the facility and eventually enter Grays Harbor.

21.     BWC has violated and continues to violate the Permits and Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, by discharging pollutants in violation of an NPDES Permit. BWC's violations of the Permits are set forth in sections I through VI of the Notice Letter attached hereto as Exhibit 1 and are incorporated herein by this reference. In particular, and among the other violations described in the Notice letter, BWC has violated the Permits by failing to comply with water quality standards, failing to comply with AKART standards, failing to implement BMPs to control water quality, failing to implement corrective actions, failing to establishing an adequate SWPPP, failing to collect or analyze quarterly samples, failing to submit correct sample data on DMRs, failing to correctly and timely submit Discharge Monitoring Reports (DMRs), failing to correctly and timely submit Annual Reports, failing comply with visual monitoring requirements, failing to record information, failing to retain records, and failing to report permit violations.

22.     BWC discharges stormwater from the facility containing levels of pollutants that exceed the benchmark values established by the Permits, including the days on which BWC collected samples with the results identified in Table 1, and is likely to continue discharging comparably unacceptable levels of pollutants in its stormwater:

COMPLAINT - 6

1

| Table 1: Monitoring Point 002 Benchmark Exceedances | | | |
|---|---|---|---|
| Quarter in which sample was collected | pH (Benchmark: 5.0 - 9.0 Standard Units) | Copper (Benchmark: 14 µg/L) | Zinc (Benchmark: 117 µg/L) |
| Third Quarter 2018 | | 32.9 | 774.2 |
| Third Quarter 2019 | | | 167 |
| Fourth Quarter 2019 | | 43.8 | 464.9 |
| First Quarter 2020 | 4.6 4.9 | | 196.05 |
| Third Quarter 2020 | | | 140 |

23.     The stormwater monitoring data provided in Table 1 shows benchmark exceedances included in the stormwater monitoring results that BWC submitted to Ecology.

24.     The Permits requires BWC's monitoring to be representative of discharges from the facility. The stormwater monitoring results that BWC routinely submits to Ecology are not representative of the facility's stormwater discharges, as described in detail in section III.A in the Notice Letter attached hereto as Exhibit 1.

25.     BWC's stormwater discharges are causing or contributing to violations of water quality standards and therefore violate the Permits. Discharges from BWC's facility contribute to the polluted conditions of the waters of the state, including the water quality standards of Grays Harbor. Discharges from BWC's facility contribute to the ecological impacts that result from the pollution of these waters and to Twin Harbors and its members' injuries resulting therefrom. These requirements and BWC's violations thereof are described in detail in section I of the Notice Letter, attached hereto as Exhibit 1, and incorporated herein by this reference.

26.     BWC's exceedances of the benchmark values indicate that BWC is failing to apply AKART to its discharges and/or is failing to implement an adequate SWPPP and BMPs. BWC violated and continues to violate the Permits by not developing, modifying, and/or implementing BMPs in accordance with the requirements of the Permits, and/or by not applying

COMPLAINT - 7

AKART to discharges from the facility. These requirements and BWC's violations thereof are described in detail in section I.B and section II of the Notice Letter, attached as <u>Exhibit 1</u>, and incorporated herein by this reference.

27.     BWC has violated and continues to violate the monitoring requirements of the Permits. For example, the Permits require BWC to sample its stormwater discharges once during every calendar quarter at each distinct point of discharge offsite except for substantially identical outfalls. However, BWC has failed and is failing to monitor discharges from the multiple distinct points of discharge. Instead, BWC is collecting samples from at least five different monitoring locations and mixing them, despite being told not to multiples times by Ecology as described in section III.A of the Notice Letter. BWC also failed to submit correct sample data on its DMRs as required by Condition G20 of the Permits by submitting sample data from all discharge points as discharge from Monitoring Point 002 in its DMR despite being aware that this practice is incorrect; BWC failed to comply with sample timing and frequency prescribed by the Permits by failing to sample from all discharge points as described in section III.A of the Notice Letter; BWC failed to collect and analyze stormwater samples for all parameters at Monitoring Point 002 during the first quarter 2019 and second quarter 2019; BWC failed to submit timely DMRs for the third quarter 2018, fourth quarter 2019, and second quarter 2020; BWC failed to submit timely Annual Reports for 2019, and 2020; BWC failed to submit a complete and accurate Annual Report in 2019 and 2020; and BWC failed to comply with visual monitoring requirements by failing to conduct Industrial Stormwater Monthly Inspection Reports by qualified personnel, including each and every month since May 3, 2018. The monitoring and inspection requirements and BWC's violations thereof are described in section III of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and incorporated herein by this reference.

COMPLAINT - 8

28.     BWC has not conducted and/or completed the Level One Corrective Action responses as required by the Permits. These requirements of the Permits and BWC's violations thereof are described in section IV.A of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and incorporated herein by this reference.

29.     Condition S8.B of the Permits require a permittee to undertake a Level One Corrective Action whenever it exceeds a benchmark value identified in Condition S5.A, Table 2 of the Permits and Condition S5.B.2, Table 3 of the 2015 Permit. A Level One Corrective Action comprises of conducting an inspection to investigate the cause, review of the SWPPP to ensure permit compliance, revisions to the SWPPP to include additional operational source control BMPs with the goal of achieving the applicable benchmark values in future discharges, signature and certification of the revised SWPPP, summary of the Level One Corrective Action in the Annual Report, and full implementation of the revised SWPPP as soon as possible, but no later than the DMR due date for the quarter the benchmark was exceeded. Condition S8.A of the 2020 Permit requires that the permittee implement any Level One Corrective Action required by the 2015 Permit.

30.     BWC triggered Level One Corrective Action requirements for each benchmark range exceedance identified in Table 1 above. BWC has violated the requirements of the Permits described above by failing to conduct a Level One Corrective Action in accordance with the Permits' conditions, including the required inspection to investigate the cause; review, revision, and certification of the SWPPP; the required implementation of additional BMPs; and the required summarization in the Annual Report, each time during the past five years that its quarterly stormwater sampling results were greater than a benchmark, including the benchmark exceedances listed in Table 1 above. These corrective action requirements and BWC's violations

COMPLAINT - 9

thereof are described in section IV.A of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference.

31.     Condition S8.C of the Permits require a permittee to undertake a Level Two Corrective Action whenever it exceeds a benchmark value identified in Condition S5.A, Table 2 of the Permits and Condition S5.B.2, Table 3 of the 2015 Permit during any two quarters during a calendar year. A Level Two Corrective Action comprises review of the SWPPP to ensure permit compliance, revisions to the SWPPP to include additional structural source control BMPs with the goal of achieving the applicable benchmark values in future discharges, signature and certification of the revised SWPPP, summary of the Level Two Corrective Action in the Annual Report, and full implementation of the revised SWPPP as soon as possible, but no later than August 31st of the year following the triggering of the Level Two Corrective Action. Condition S8.A of the 2020 Permit requires that the permittee implement any Level Two Corrective Action required by the 2015 Permit.

32.     BWC triggered Level Two Corrective Action requirements for each benchmark exceedance identified in Table 1 above that occurred in any two quarters of a calendar year. BWC has violated the requirements of the Permits described above by failing to conduct a Level Two Corrective Action in accordance with Permit conditions, including the required review, revision, and certification of the SWPPP, the required implementation of additional structural source control BMPs, and the required summarization in the Annual Report, each time during the past five years that its quarterly stormwater sampling results were greater than a benchmark, for any two quarters during a calendar year, including the benchmark exceedances listed in Table 1 above. These violations include BWC's failure to fulfill these obligations for zinc triggered by its stormwater sampling during calendar year 2019 and 2020. These corrective action requirements

Smith & Lowney, pllc
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

and BWC's violations thereof are described in section IV.B of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference.

33.     BWC has failed and continues to fail to comply with recording and record keeping requirements of the Permits. These requirements and BWC's violations thereof are described in section V of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference.

34.     Condition S9.E of the Permits requires BWC to take certain actions, including reporting to Ecology, in the event BWC is unable to comply with any terms and conditions of the Permits which may endanger human health or the environment. BWC has failed to comply with these requirements of the Permits by failing to report and subsequently correct permit violations, including each and every time BWC failed to comply with corrective action requirements as described above in paragraphs 28-32, each and every time BWC failed to sample a stormwater discharge as described above in paragraph 27, and each and every time BWC discharged stormwater with amounts of pollutants in excess of the Permit benchmarks as described in paragraphs 22-23 above. These requirements and BWC's violations thereof are described in section VI of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and incorporated herein by this reference.

35.     Each of BWC's violations of the Permits and the CWA are ongoing in that they are currently occurring or are likely to re-occur at least intermittently in the future.

36.     A significant penalty should be imposed against BWC pursuant to the penalty factors set forth in 33 U.S.C. § 1319(d).

37.     BWC's violations were avoidable had BWC been diligent in overseeing facility operations and maintenance.

Smith & Lowney, pllc
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

38.     BWC has benefited economically as a consequence of its violations and its

failure to implement stormwater management improvements at the facility.

39.     In accordance with Section 505(c)(3) of the CWA, 33 U.S.C. § 1365(c)(3), and 40

C.F.R. § 135.4, Twin Harbors is mailing a copy of this Complaint to the Administrator of the

EPA, the Regional Administrator for Region 10 of the EPA, and the Attorney General of the

United States.

## VI.     CAUSE OF ACTION

40.     The preceding paragraphs and the allegations in the Notice Letter attached hereto

as Exhibit 1 are incorporated herein.

41.     BWC's violations of the Permits described herein and in the Notice Letter

constitute violations of violations of "effluent standards or limitations" under the CWA per 33

U.S.C. § 1365(f)(7).

42.     No agency has taken an enforcement action constitution diligent prosecution or

otherwise precluding claims under 33 U.S.C. §§ 1319 or 1365(a).

43.     Prior notice of violations and claims was provided to Defendant and others as

required.

42.     These violations committed by BWC are ongoing or are reasonably likely to

continue to occur. Any and all additional violations of the Permits and the CWA which occur

after those described in Twin Harbors' Notice Letter, but before a final decision in this action,

should be considered ongoing violations subject to this Complaint.

43.     Without the imposition of appropriate civil penalties and the issuance of an

injunction, BWC is likely to continue to violate the Permits and the CWA to the further injury of

Twin Harbors, its members, and others.

COMPLAINT - 12

## VII.   RELIEF REQUESTED

Wherefore, Twin Harbors respectfully requests that this Court grant the following relief:

A.      Issue a declaratory judgment that BWC has violated and continues to be in violation of the Permits and Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342;

B.      Enjoin BWC from operating the facility in a manner that results in further violations of the Permits and the CWA;

C.      Order BWC to immediately implement a SWPPP that complies with the 2020 Permit;

D.      Order BWC to allow Twin Harbors to participate in the development and implementation of BWC's SWPPP;

E.      Order BWC to provide Twin Harbors, for a period beginning on the date of the Court's Order and running for three years after BWC achieves compliance with all of the conditions of the Permits, with copies of all reports and other documents which BWC submits to Ecology regarding BWC's coverage under the Permits at the facility at the time these documents are submitted to Ecology;

F.      Order BWC to take specific actions to remediate the environmental harm caused by its violations;

G.      Order BWC to pay civil penalties of $59,973 per day of violation for each violation committed by BWC, pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a), and 40 C.F.R. § 19 and 19.4;

H.      Award Twin Harbors its litigation expenses, including reasonable attorneys' and expert witness fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d), and any other applicable authorization; and

COMPLAINT - 13

1      I.      Award such other relief as this Court deems appropriate.

2

3      RESPECTFULLY SUBMITTED this 8th day of April, 2022

4

5                    **SMITH & LOWNEY, PLLC**

By:      By: _s/Richard A. Smith_
            Richard A. Smith, WSBA #21788

6                  By: _s/Savannah Rose_

7                  Savannah Rose, WSBA #57062
            Attorneys for Plaintiff

8                  2317 E. John St.,
            Seattle, WA 98112

9                  Tel: (206) 860-2124
            Fax: (206) 860-4187

10                 E-mail: richard@smithandlowney.com,
            savannah@smithandlowney.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

COMPLAINT - 14

Exhibit 1

# SMITH & LOWNEY, PLLC
### 2317 EAST JOHN STREET
### SEATTLE, WASHINGTON 98112
### (206) 860-2883, FAX (206) 860-4187

January 18, 2022

**Via Certified Mail - Return Receipt Requested**

Managing Agent
BWC Terminals LLC
3128 Port Industrial Rd
Hoquiam, WA 98550-4211

Managing Agent
BWC Terminals LLC
1111 Bagby St STE 1800
Houston, TX 77002-2586

Re:     **NOTICE OF INTENT TO SUE UNDER THE CLEAN WATER ACT AND
        REQUEST FOR COPY OF STORMWATER POLLUTION PREVENTION
        PLAN**

Dear Managing Agent:

        We represent Twin Harbors Waterkeeper, P.O. Box 751, Cosmopolis, WA 98537,
(206) 293-0574. Any response or correspondence related to this matter should be directed to
us at the letterhead address. This letter is to provide you with sixty days' notice of Twin
Harbors Waterkeeper's intent to file a citizen suit against BWC Terminals LLC formerly
Contanda Terminals LLC ("BWC"), under section 505 of the Clean Water Act ("CWA"), 33
U.S.C. § 1365, for the violations described below. This letter is also a request for a copy of
the complete and current stormwater pollution prevention plan ("SWPPP") required by
BWC's National Pollution Discharge Elimination System ("NPDES") permit.

        BWC was granted coverage under the Industrial Stormwater General Permit ("ISGP")
issued by the Washington Department of Ecology ("Ecology") effective May 3, 2018 and
expired on December 31, 2019, under NPDES No. WAR306512 (the "2015 Permit").
Ecology granted BWC coverage under the current iteration of the ISGP effective January 1,
2020, set to expire on December 31, 2024 (the "2020 Permit"), which maintains the same
permit number: WAR306512.

        BWC has violated and continues to violate the CWA (see Sections 301 and 402 of the
CWA, 33 U.S.C. §§ 1311 and 1342) and the terms and conditions of the 2015 Permit and
2020 Permit (collectively, the "Permits") with respect to operations of, and discharges of
stormwater and pollutants from its facility, located at or about 3128 Port Industrial Rd,
Hoquiam, WA 98550-4211 (the "facility") as described herein, to the Chehalis River and

Notice of Intent to Sue - 1

eventually Grays Harbor. The facility subject to this notice includes any contiguous or adjacent properties owned or operated by BWC.

## I.   COMPLIANCE WITH APPLICABLE STANDARDS

### A.  Compliance with Water Quality Standards

Condition S10.A of the Permits prohibits discharges that cause or contribute to violations of water quality standards. Water quality standards are the foundation of the CWA and Washington's efforts to protect clean water. In particular, water quality standards represent the U.S. Environmental Protection Agency ("EPA") and Ecology's determination, based on scientific studies, of the thresholds at which pollution starts to cause significant adverse effects on fish or other beneficial uses. For each water body in Washington, Ecology designates the "beneficial uses" that must be protected through the adoption of water quality standards.

A discharger must comply with both narrative and numeric criteria water quality standards. WAC 173-201A-010; WAC 173-201A-510 ("No waste discharge permit can be issued that causes or contributes to a violation of water quality criteria, except as provided for in this chapter."). Narrative water quality standards provide legal mandates that supplement the numeric criteria. Furthermore, the narrative water quality standard applies with equal force even if Ecology has established a numeric water quality standard. Specifically, Condition S10.A of the Permits requires that BWC's discharges not cause or contribute to an excursion of Washington State water quality standards.

BWC discharges to the Chehalis River via storm drain and then to Grays Harbor. BWC discharges stormwater that contains elevated levels of pH, copper, and zinc as indicated in Table 1. Moreover, the discharges BWC has sampled and reported underrepresent the polluted condition of its facility discharges, as explained below. These discharges cause and/or contribute to violations of water quality standards, in the Chehalis River and Grays Harbor, and have occurred each and every day since May 3, 2018 on which there was 0.1 inch or more of precipitation, and continue to occur. *See* WAC 173-201A-260 (including toxics and aesthetics criteria); WAC 173-201A-200 (use designations for fresh water and including criteria for pH); WAC 173-201A-240 (including criteria for copper and zinc).

**Table 1: Monitoring Point 002 Benchmark Exceedances**

| Quarter in which sample was collected | pH (Benchmark: 5.0-9.0 S.U.) | Cu (Benchmark: 14 µg/L) | Zn (Benchmark: 117 µg/L) |
|---|---|---|---|
| Third Quarter 2018 | | 32.9 | 774.2 |
| Third Quarter 2019 | | | 167 |
| Fourth Quarter 2019 | | 43.8 | 464.9 |
| First Quarter 2020 | 4.6 4.9 | | 196.05 |
| Third Quarter 2020 | | | 140 |

### B.     Compliance with AKART Standards

Condition S10.C of the Permits requires BWC to apply all known and reasonable methods of prevention, control, and treatment ("AKART") to all discharges, including preparation and implementation of an adequate SWPPP and best management practices ("BMPs"). BWC has violated and continues to violate these conditions by failing to apply AKART to its discharges or to implement an adequate SWPPP and BMPs as evidenced by the elevated levels of pollutants in its discharge indicated in Table 1 and as described below in this Notice of Intent to Sue.

Condition S1.A of the Permits requires that all discharges and activities authorized be consistent with the terms and conditions of the Permits. BWC has violated these conditions by discharging and acting inconsistent with the conditions of the Permits as described in this Notice of Intent to Sue.

## II.     STORMWATER POLLUTION PREVENTION PLAN VIOLATIONS

BWC is in violation of the Permits' SWPPP provisions as follows:

1. Condition S3.A of the Permits requires BWC to develop and implement a SWPPP that contains specified components. Condition S3.A.2 of the 2015 Permit and Condition S3.A.1 of the 2020 Permit requires the SWPPP to specify BMPs necessary to provide AKART and ensure that discharges do not cause or contribute to violations of water quality standards. BWC has violated these requirements of the Permits each and every day since May 3, 2018 and continues to violate them as it has failed to prepare and/or implement a SWPPP that includes AKART BMPs and BMPs necessary to comply with state water quality standards.

2. Condition S3.A of the Permits requires BWC to have and implement a SWPPP that is consistent with permit requirements, fully implemented as directed by permit conditions, and updated as necessary to maintain compliance with permit conditions. BWC has violated these requirements of the Permits each and every day since May 3, 2018 and continues to violate them because its SWPPP is not consistent with permit requirements, has not been fully implemented, and has not been updated as necessary.

3. The SWPPP fails to satisfy the requirements of Condition S3 of the Permits because it does not adequately describe BMPs. Condition S3.B.4 of the Permits requires that the SWPPP include a description of the BMPs that are necessary for the facility to eliminate or reduce the potential to contaminate stormwater. Condition S3.A of the Permits requires that the SWPPP include BMPs consistent with approved stormwater technical manuals or document how stormwater BMPs included in the SWPPP are demonstratively equivalent to the practices contained in the approved stormwater technical manuals, including the proper selection, implementation, and maintenance of all applicable and appropriate BMPs. *See Stormwater Management Manual for Western Washington*, July 2019, https://fortress.wa.gov/ecy/ezshare/wq/Permits/Flare/2019SWMMWW/Content/Resources/DocsForDownload/2019SWMMWW.pdf. BWC's SWPPP does not comply with these

requirements because it does not adequately describe BMPs and does not include BMPs consistent with approved stormwater technical manuals nor does it include BMPs that are demonstratively equivalent to such BMPs with documentation of BMP adequacy.

4. BWC's SWPPP fails to satisfy the requirements of Condition S3.B.2 of the Permits because it fails to include a facility assessment as mandated. The SWPPP fails to include an adequate facility assessment because it does not describe the industrial activities conducted at the site, the general layout of the facility including buildings and storage of raw materials, the flow of goods and materials through the facility, regular business hours, and seasonal variations in business hours or in industrial activities as required.

5. BWC's SWPPP fails to satisfy the requirements of Condition S3.B.1 of the Permits because it does not include a site map that identifies significant features, the stormwater drainage and discharge structures, the stormwater drainage areas for each stormwater discharge point off-site, a unique identifying number for each discharge point, each sampling location with a unique identifying number, paved areas and buildings, areas of pollutant contact associated with specific industrial activities, conditionally approved non-stormwater discharges, surface water locations, areas of existing and potential soil erosion, vehicle maintenance areas, and lands and waters adjacent to the site that may be helpful in identifying discharge points or drainage routes.

6. BWC's SWPPP fails to comply with Condition S3.B.2.b of the Permits because it does not include an inventory of industrial activities that identifies all areas associated with industrial activities that have been or may potentially be sources of pollutants as required. The SWPPP does not identify all areas associated with loading and unloading of dry bulk materials or liquids, outdoor storage of materials or products, outdoor manufacturing and processing, onsite dust or particulate generating processes, on-site waste treatment, storage, or disposal, vehicle and equipment fueling, maintenance, and/or cleaning, roofs or other surfaces exposed to air emissions from a manufacturing building or a process area, and roofs or other surfaces composed of materials that may be mobilized by stormwater as required by these conditions.

7. BWC's SWPPP does not comply with Condition S3.B.2.c of the Permits because it does not include an adequate inventory of materials. The SWPPP does not include an inventory of materials that lists the types of materials handled at the site that potentially may be exposed to precipitation or runoff and that could result in stormwater pollution, a short narrative for material describing the potential for the pollutants to be present in stormwater discharge that is updated when data becomes available to verify the presence or absence of the pollutants, a narrative description of any potential sources of pollutants from past activities, materials and spills that were previously handled, treated, stored, or disposed of in a manner to allow ongoing exposure to stormwater as required. The SWPPP does not include the method and location of on-site storage or disposal of such materials and a list of significant spills and significant leaks of toxic or hazardous pollutants as these permit conditions require.

8. BWC's SWPPP does not comply with Condition S3.B.3 of the Permits because it does not identify specific individuals by name or title whose responsibilities include SWPPP development, implementation, maintenance, and modification.

9. Condition S3.B.4 of the Permits requires that permittees include in their SWPPPs and implement mandatory BMPs. BWC is in violation of this requirement because it has failed to include in its SWPPP and implement the mandatory BMPs of the Permits.

10. BWC's SWPPP does not comply with Condition S3.B.4.b.i of the Permits because it does not include required operational source control BMPs. BWC fails to include operation source control BMPs in the following categories: good housekeeping (including the definition of ongoing maintenance and cleanup of areas that may contribute pollutants to stormwater discharges, and a schedule/frequency for each housekeeping task); preventive maintenance (including BMPs to inspect and maintain stormwater drainage, source controls, treatment systems, and plant equipment and systems, and the schedule/frequency for each task); spill prevention and emergency cleanup plan (including BMPs to prevent spills that can contaminate stormwater, for material handling procedures, storage requirements, cleanup equipment and procedures, and spill logs); employee training (including an overview of what is in the SWPPP, how employees make a difference in complying with the SWPPP, spill response procedures, good housekeeping, maintenance requirements, and material management practices, how training will be conducted, the frequency/schedule of training, and a log of the dates on which specific employees received training); inspections and recordkeeping (including documentation of procedures to ensure compliance with permit requirements for inspections and recordkeeping, identification of personnel who conduct inspections, provision of a tracking or follow-up procedure to ensure that a report is prepared and appropriate action taken in response to visual monitoring, definition of how BWC will comply with signature and record retention requirements, and certification of compliance with the SWPPP and Permit). Some of the BMPs that BWC is failing to implement as evidenced by Annual Reports, emails to Ecology, and ERTS (Environmental Report Tracking System) reports include:

- Failure to prevent or minimize leaks and spills, documented by the June 4, 2020 email to Ecology;
- Failure to prevent debris, such as grain dust, from accumulating at the facility and contaminating the surrounding area, documented by the October 3, 2019 ERTS report;
- Failure to prevent illicit discharges, documented by the June 4, 2020 email to Ecology; and
- Failure to coat galvanized surfaces to prevent or minimize zinc in stormwater discharges, documented by the 2019 Annual Report.

11. BWC's SWPPP does not comply with Condition S3.B.4.b.i.7 of the Permits because it does not include measures to identify and eliminate the discharge of process wastewater, domestic wastewater, noncontact cooling water, and other illicit discharges to stormwater sewers or surface waters and ground waters of the state, including failing to prevent solids from entering the stormwater and discharging off-site.

12. BWC's SWPPP does not comply with Condition S3.B.4.b.ii of the Permits because it does not include required structural source control BMPs to minimize the exposure of manufacturing, processing, and material storage areas to rain, snow, snowmelt, and runoff.

13. BWC's SWPPP does not comply with Condition S3.B.4.b.iii of the Permits because it does not include treatment BMPs as required.

14. BWC's SWPPP fails to comply with Condition S3.B.4.b.v of the Permits because it does not include BMPs to prevent the erosion of soils or other earthen materials and prevent off-site sedimentation and violations of water quality standards.

15. BWC's SWPPP fails to satisfy the requirements of Condition S3.B.5 of the Permits because it fails to include a stormwater sampling plan as required. The SWPPP does not include a sampling plan that: identifies points of discharge to surface waters, storm sewers, or discrete ground water infiltration locations; documents why each discharge point is not sampled; identifies each sampling point by its unique identifying number; identifies staff responsible for conducting stormwater sampling; specifies procedures for sampling collection and handling; specifies procedures for sending samples to the a laboratory; identifies parameters for analysis, holding times and preservatives, laboratory quantization levels, and analytical methods; and specifies the procedure for submitting the results to Ecology.

## III.    MONITORING AND REPORTING VIOLATIONS

### A.    Failure to Collect Quarterly Samples

Condition S4.B of the Permits requires BWC to collect a sample of its stormwater discharge once during every calendar quarter. BWC violated this requirement by failing to collect stormwater samples for Monitoring Point 002 during the first quarter of 2019 and the second quarter of 2019.

Condition S4.B.2.c of the 2015 Permit and S4.B.3.a of the 2020 Permit require BWC to collect stormwater samples at each distinct point of discharge offsite except for substantially identical outfalls, in which case only one of the substantially identical outfalls must be sampled. These conditions set forth sample collection criteria but require the collection of a sample even if the criteria cannot be met. BWC has multiple distinct points of discharge where stormwater is leaving the facility that it is not sampling and analyzing appropriately. BWC is taking grab samples from multiple points and blending them together, as evidenced by the December 10, 2019 Inspection Report, 2019 Annual Report, and May 8, 2020 email to Ecology. It was also noted in the December 10, 2019 Inspection Report that BWC was told to stop mixing samples together and each sample point requires a discrete identifier set up in PARIS in order to provide sampling data that is representative and proportionate. In the alternative, BWC has only collected stormwater discharge samples from one point of discharge, designated as Monitoring Point 002 (Outfall 001), as shown in its DMRs. There are other points of stormwater discharge from the facility and BWC is in violation of these conditions of the Permits by failing to collect and analyze samples from

them during every quarter since May 3, 2018. These violations will continue until BWC commences proper monitoring all distinct points of discharge.

**B.      Failure to Report Correct Sample Data on DMRs**

Condition G20 of the Permits requires BWC to promptly submit relevant facts in a permit application or in any report to Ecology when it becomes aware that it failed to submit such facts or information. BWC has violated this condition each and every quarter since May 3, 2018 by entering the sample data from multiple distinct points of discharge as discharge from Monitoring Point 002 in its DMRs. BWC has been made aware of these failures to submit correct and accurate sample data on its DMRs as documented by the December 10, 2019 Inspection Report. To the extent that BWC may assert that it was not previously aware of its failure to submit correct and accurate sample data on its DMRs, it has now been made so aware.

In addition, BWC submitted an Electronic Submission Cover Letter with an attestation agreed to at signing for each and every DMR since May 3, 2018 that states, "I had the opportunity to review the content or meaning of the submittal before signing it; and to the best of my knowledge and belief, the information submitted is true, accurate, and complete. I intend to submit this information as part of the implementation, oversight, and enforcement of a federal environmental program. I am aware there are significant penalties for submitting false information, including possible fines and imprisonment." BWC could be subject to significant criminal penalties for submitting false sample data.

**C.      Failure to Correctly and Timely Submit Discharge Monitoring Reports**

Condition S9.A of the 2015 Permit and Condition S9.B of the 2020 Permit require BWC to use DMR forms provided or approved by Ecology to summarize, report and submit monitoring data to Ecology. For each monitoring period (calendar quarter) a DMR must be completed and submitted to Ecology not later than 45 days after the end of the monitoring period. BWC has violated these conditions by failing to submit a DMR within the time prescribed for the third quarter 2018, fourth quarter 2019, and second quarter 2020. In addition, BWC failed to submit complete and accurate DMRs each and every quarter since May 3, 2018, as describe in section 3.A of this Notice of Intent to Sue.

**D.      Failure to Correctly and Timely Submit Annual Reports**

Condition S9.B of the 2015 Permit and Condition S9.C of the 2020 Permit require BWC to submit a complete and accurate Annual Report to Ecology no later than May 15th of each year. The Annual Report must include corrective action documentation as required in Condition S8.B–D of the Permits. If a corrective action is not yet completed at the time of submission of the Annual Report, BWC must describe the status of any outstanding corrective action. Specific information to be included in the Annual Report is identification of the conditions triggering the need for corrective action, description of the problem and identification of dates discovered, summary of any Level One, Two, or Three Corrective Actions completed during the previous calendar year, including the dates corrective actions

completed, and description of the status of any Level 2 or 3 Corrective Actions triggered during the previous calendar year, including identification of the date BWC expects to complete corrective actions.

BWC violated these conditions by failing to submit a complete Annual Report within the prescribed time for 2019 and 2020.

### E.     Failure to Comply with Visual Monitoring Requirements

Condition S7.A of the Permits requires that a monthly visual inspection be conducted at the facility by qualified personnel. Condition S7.B of the Permits requires each inspection to include observations made at stormwater sampling locations and areas where stormwater associated with industrial activity is discharged; observations for the presence of floating materials, visible oil sheen, discoloration, turbidity, odor, etc. in the stormwater discharges; observations for the presence of illicit discharges; a verification that the descriptions of potential pollutant sources required by the permit are accurate; a verification that the site map in the SWPPP reflects current conditions; and an assessment of all BMPs that have been implemented (noting the effectiveness of the BMPs inspected, the locations of BMPs that need maintenance, the reason maintenance is needed and a schedule for maintenance, and locations where additional or different BMPs are needed). BWC has violated and continues to violate these requirements because, since May 3, 2018, it has failed to conduct each of the requisite visual monitoring and inspections each and every month.

Condition S7.C of the Permits requires that BWC record the results of each inspection in an inspection report or checklist that is maintained on-site and documents the observations, verifications, and assessments required. The report/checklist must include the time and date of the inspection; the locations inspected; a statement that, in the judgment of the person conducting the inspection and the responsible corporate officer, the facility is either in compliance or out of compliance with the SWPPP and the Permits; a summary report and schedule of implementation of the remedial actions BWC plans to take if the site inspection indicates that the facility is out of compliance; the name, title, signature and certification of the person conducting the facility inspection; and a certification and signature of the responsible corporate officer or a duly authorized representative. BWC is in violation of these requirements because, since May 3, 2018, it failed to prepare and maintain the requisite inspection reports or checklists and failed to make the requisite certifications and summaries.

## IV.     CORRECTIVE ACTION VIOLATIONS

### A.     Violations of the Level One Requirements

Condition S8.B of the Permits requires BWC take specified actions, called a "Level One Corrective Action," each time quarterly stormwater sample results exceed a benchmark value or are outside the benchmark range. Condition S5.A Table 2 of the Permits, as well as Condition S5.B Table 3 of the 2015 Permit establishes the following benchmarks: turbidity 25 NTU; pH 5–9 SU; total copper 14 µg/L; total zinc 117 µg/L; no visible oil sheen; and

NWTPHDx 10 mg/L (NWTPHDx monitoring requirement was discontinued for the 2020 Permit).

As described by Condition S8.B of the Permits, a Level One Corrective Action requires that within 14 days of receipt of sampling results that indicate a benchmark exceedance during a given quarter; or, for parameters other than pH or visible oils sheen, the end of the quarter, whichever is later, BWC shall: (1) conduct an inspection to investigate the cause; (2) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits and contains the correct BMPs from the applicable Stormwater Management Manual; (3) make appropriate revisions to the SWPPP to include additional operational source control BMPs with the goal of achieving the applicable benchmark values in future discharges; (4) summarize the Level One Corrective Action in the Annual Report required under Condition S9.B of the Permits; and (5) and sign, certify, and fully implement the revised SWPPP in accordance with Condition S3 of the Permits and the applicable stormwater management manual as soon as possible, and no later than the DMR due date for the quarter the benchmark was exceeded.

BWC is in violation of the Level One Corrective Action requirements in the Permits. It failed to implement a Level One Corrective Action within 14 days of receipt or the end of the quarter for each and every benchmark exceedance, including the exceedances in the third quarter of 2018, third quarter of 2019, fourth quarter of 2019, first quarter of 2020, and third quarter of 2020, as identified in Table 1 above. BWC's failures to comply with the Level One Corrective Action requirements include the failure to conduct an inspection to investigate the cause; perform the required review; revision and certification of the SWPPP; perform required implementation of additional BMPs; complete the required summarization in the Annual Report; and sign, certify, and fully implement the revised SWPPP in accordance with Condition S3 of the Permit each and every time since May 3, 2018 when its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range.

### B.   Violations of the Level Two Requirements

Condition S8.C of the Permits requires BWC take specified actions, called a "Level Two Corrective Action," each time quarterly stormwater sample results exceed an applicable benchmark value or are outside the benchmark range in any two quarters during a calendar year. The Permits establish the benchmarks applicable to BWC, which are described in section IV.A of this Notice of Intent to Sue.

As described by Condition S8.C of the Permits, a Level Two Corrective Action requires BWC: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits; (2) make appropriate revisions to the SWPPP to include additional structural source control BMPs with the goal of achieving the applicable benchmark value(s) in future discharges; (3) summarize the Level Two Corrective Action (planned or take) in the Annual Report required under Condition S9.B of the Permits; and (4) sign, certify, and implement the revised SWPPP according to Condition S3 of the Permits and the applicable stormwater management manual as soon as possible, and no later than August 31 of the following year.

BWC is in violation of the Level Two Corrective Action requirements of the Permits. BWC's continuing violations of these requirements include, but are not limited to, its failure to perform a Level Two Corrective Action for zinc when it was triggered in the fourth quarter of 2019 and failure to perform a Level Two Corrective Action for zinc when it was triggered in the third quarter of 2020 as identified in Table 1 above. BWC is in violation of the Permits for each instance when quarterly stormwater sampling results from the facility were greater than a benchmark or outside the benchmark range for any two quarters during a calendar year and BWC failed to conduct and complete a Level Two Corrective Action for discharges from its facility in accordance with Permits' conditions by, inter alia, completing the required review, revision and certification of the SWPPP; performing required implementation of additional BMPs, including additional structural source control BMPs; and completing required summarization in the Annual Report.

## V.   VIOLATIONS OF THE RECORDKEEPING REQUIREMENTS

### A.   Failure to Record Information

Condition S4.B of the Permits requires BWC record and retain specified information for each stormwater sample taken, including the sample date and time, a notation describing if BWC collected the sample within the first 30 minutes of stormwater discharge event, an explanation of why BWC could not collect a sample within the first 30 minutes of a stormwater discharge event, the sample location, method of sampling and of preservation, and the individual performing the sampling. BWC is in violation of these conditions as it has not recorded each of these specified items for each sample taken since May 3, 2018

### B.   Failure to Retain Records

Condition S9.C of the 2015 Permit and S9.D of the 2020 Permit require BWC to retain for a minimum of five years a copy of the current Permit, a copy of BWC's coverage letter, records of all sampling information, inspection reports including required documentation, any other documentation of compliance with permit requirements, all equipment calibration records, all BMP maintenance records, all original recordings for continuous sampling instrumentation, copies of all laboratory results, copies of all required reports, and records of all data used to complete the application for the Permit. BWC is in violation of these conditions because it has failed to retain records of such information, reports, and other documentation since May 3, 2018.

## VI.   FAILURE TO REPORT PERMIT VIOLATIONS

Condition S9.E of the 2015 Permit and Condition S9.F of the 2020 Permit require BWC to take certain actions in the event it is unable to comply with any of the terms and conditions of the Permits which may endanger human health or the environment or exceed any numeric effluent limitation in the permit. In such circumstances, BWC must immediately take action to minimize potential pollution or otherwise stop the noncompliance and correct the problem, and BWC must immediately notify the appropriate Ecology regional office of the failure to comply. BWC must then submit a detailed written report to Ecology, including

specified details, within 5 days of the time BWC became aware of the circumstances unless Ecology requests an earlier submission.

BWC routinely violates these requirements, including each and every time it failed to comply with the corrective action requirements described in section IV of this Notice of Intent to Sue, and each and every time BWC discharged stormwater with concentrations of pollutants in excess of the Permits' benchmarks, as described in Table 1 above. All these violations may endanger human health or the environment.

## VII.   REQUEST FOR SWPPP

Pursuant to Condition S9.F of the 2015 Permit and Condition S9.G of the 2020 Permit, Twin Harbors Waterkeeper hereby requests that BWC provide a copy of, or access to, its SWPPP complete with all incorporated plans, monitoring reports, checklists, and training and inspection logs. The copy of the SWPPP and any other communications about this request should be directed to the undersigned at the letterhead address.

Should BWC fail to provide the requested complete copy of, or access to, its SWPPP as required by Condition S9.F of the 2015 Permit and Condition S9.G of the 2020 Permit, it will be in violation of that condition, which violation shall also be subject to this Notice of Intent to Sue and any ensuing lawsuit.

## VIII.   CONCLUSION

The above-described violations reflect those indicated by the information currently available to Twin Harbors Waterkeeper. These violations are ongoing. Twin Harbors Waterkeeper intends to sue for all violations, including those yet to be uncovered and those committed after the date of this Notice of Intent to Sue.

Under Sections 309(g)(2)(A) and 404(s)(4) of the CWA, 33 U.S.C. §§ 1319(d) and 1344(s)(4), each of the above-described violations subjects the violator to a penalty of up to $56,461 per day for each violation. In addition to civil penalties, Twin Harbors Waterkeeper will seek injunctive relief to prevent further violations under Sections 505(a) and (d) of the CWA, 33 U.S.C. § 1365(a) and (d), and such other relief as is permitted by law. Also, Section 505(d) of the CWA, 33 U.S.C. § 1365(d), permits prevailing parties to recover costs, including attorney's fees.

Twin Harbors Waterkeeper believes that this NOTICE OF INTENT TO SUE sufficiently states grounds for filing suit. We intend, at the close of the 60-day notice period, or shortly thereafter, to file a citizen suit against BWC under Section 505(a) of the Clean Water Act for violations.

During the 60-day notice period, we would be willing to discuss effective remedies for the violations addressed in this letter and settlement terms. If you wish to pursue such discussions in the absence of litigation, we suggest that you initiate those discussions within 10 days of receiving this notice so that a meeting can be arranged and so that negotiations

may be completed promptly. We do not intend to delay the filing of a complaint if discussions are continuing when the notice period ends.

Sincerely,

**Smith & Lowney, PLLC**

By: _s/ Richard A. Smith_
Richard A. Smith
Meredith Crafton
Savannah Rose


cc:     Michael Regan, Administrator, U.S. EPA
        Michelle Pirzadeh, Acting Region 10 Administrator, U.S. EPA
        Laura Watson, Director, Washington Department of Ecology
        Corporation Service Company (300 Deschutes Way SW STE 208 Mc-Csc1, Tumwater, WA, 98501, United States)