UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TWIN HARBORS WATERKEEPER,<br><br>                    Plaintiff,<br>     v.<br><br>BWC TERMINALS LLC,<br><br>                    Defendant. | CASE NO. 3:22-cv-05233-LK<br><br>CONSENT DECREE |

## I.   STIPULATIONS

WHEREAS, Plaintiff Twin Harbors Waterkeeper ("Twin Harbors") sent a sixty-day notice of intent to sue letter to Defendant BWC Terminals LLC ("BWC") on or about January 18, 2022, and filed a complaint on April 8, 2022, alleging violations of the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, relating to discharges of stormwater from BWC's facility in Hoquiam, Washington and seeking declaratory and injunctive relief, civil penalties, and attorneys' fees and costs. BWC denies these allegations.

CONSENT DECREE - 1

1   WHEREAS, Twin Harbors and BWC agree that settlement of these matters is in the best
2   interests of the parties and the public, and that entry of this Consent Decree is the most appropriate
3   means of resolving this action.
4   NOW THEREFORE, Twin Harbors and BWC stipulate to the entry of this Consent Decree
5   without trial, adjudication, or admission of any issues of fact or law regarding Twin Harbors'
6   claims or allegations set forth in its complaint and its sixty-day notice.
7   DATED AND PRESENTED this 16th day of May, 2023.

| STOEL RIVES LLP | SMITH & LOWNEY, PLLC |
|---|---|
| By [signature in original]<br>Veronica M. Keithley, WSBA #52784<br>Beth S. Ginsberg, WSBA #18523<br>*Attorneys for Defendant*<br>*BWC Terminals LLC* | By [signature in original]<br>Richard A. Smith, WSBA #21788<br>Savannah Rose, WSBA #57062<br>*Attorneys for Plaintiff*<br>*Twin Harbors Waterkeeper* |
| BWC TERMINALS LLC | TWIN HARBORS WATERKEEPER |
| By [signature in original]<br>    Adam Smith<br>    Chief Operating Officer | By [signature in original]<br>    Sue Joerger<br>    Executive Director of Twin Harbors<br>    Waterkeeper |

## II.   ORDER AND DECREE

THIS MATTER came before the Court upon the Parties' Joint Motion for Entry of Consent Decree, Dkt. No. 11; the foregoing Stipulations of the parties; the Parties' Amended Proposed Consent Decree, Dkt. No. 14;[1] and the Parties' Joint Status Report, Dkt. No. 16. The Joint Status

---

[1] The Amended Proposed Consent Decree attaches a copy of BWC Terminals LLC's Stormwater Pollution Prevention Plan in response to the Court's May 4, 2023 Minute Order. *See* Dkt. No. 14-1.

CONSENT DECREE - 2

Report indicates that Twin Harbors served copies of the Amended Proposed Consent Decree upon the United States Department of Justice Environment and Natural Resource Division ("ENRD") via email on May 16, 2023, and that on May 17, 2023, ENRD responded that it does not have any objections to the Amended Proposed Consent Decree. Dkt. No. 16 at 1, 4–5. After the parties amended the proposed Consent Decree to attach a copy of BWC Terminals LLC's Stormwater Pollution Prevention Plan, the Government stated that it has no objections to the amended proposed Consent Decree. Dkt. No. 16 at 4. Having considered these materials, the Stipulations, and the promises set forth below, the Court hereby ORDERS, ADJUDGES, and DECREES as follows:

1. This Court has jurisdiction over the parties and subject matter of this action.

2. Each signatory for the parties certifies for that party that he or she is authorized to enter into the agreement set forth herein.

3. This Consent Decree applies to and binds the parties and their successors and assigns.

4. This Consent Decree and any injunctive relief ordered within applies to the operation, oversight, or both by BWC of its facility at or about 3128 Port Industrial Rd, Hoquiam, WA 98550 (the "Facility"), which is subject to National Pollutant Discharge Elimination System Permit No. WAR306512 (the "NPDES permit").

5. This Consent Decree is a full and complete settlement and release of all the claims in the complaint and the sixty-day notice and all other claims known or unknown existing as of the date of entry of the Consent Decree that could be asserted under the Clean Water Act, 33 U.S.C. §§ 1251-1387, arising from operation of the Facility. These claims are released and dismissed with prejudice. Enforcement of this Consent Decree is Twin Harbors' exclusive remedy for any violation of its terms. Twin Harbors will not support by financial assistance, personnel time, or otherwise, other lawsuits or potential lawsuits by Twin Harbors' members or other groups or

individuals that could be asserted under the Clean Water Act arising from the claims or issues resolved through or connected with this Consent Decree.

6. This Consent Decree is a settlement of disputed facts and law. It is not an admission or adjudication regarding any allegations by Twin Harbors in this case or of any fact or conclusion of law related to those allegations, nor evidence of any wrongdoing or misconduct on the part of BWC.

7. BWC agrees to the following terms and conditions for the term of the Consent Decree, in full and complete satisfaction of all the claims covered by this Consent Decree:

    a. BWC will comply fully with all conditions of the NPDES permit and any successor, modified, or replacement permit authorizing discharges of stormwater associated with industrial activity from the Facility.

    b. For the duration of this Consent Decree, BWC will, on a quarterly basis, electronically forward to Twin Harbors copies of all communications to and/or from Ecology related to its NPDES permit or stormwater discharges from the Facility.

    c. BWC will make amendments to the SWPPP (attached hereto as <u>Exhibit 5</u>) to comply with the following requirements no later than thirty (30) business days after the effective date of this Consent Decree, provide Twin Harbors with a copy of the amended SWPPP within ten (10) business days of amending, and implement and maintain the following BMPs for the life of the Consent Decree:

        i. As soon as possible, but not later than six months after the entry of this consent decree, BWC must remove the warehouse located on the premises of the Facility and any associated building materials in the immediate vicinity. During the removal process, BWC must isolate the demolition area, collect the associated stormwater, and pump the stormwater to the tank farm containment area, as well as

CONSENT DECREE - 4

use catch basin inserts surrounded by wattles at CB03 and CB10, identified in the site map attached hereto as Exhibit 2; and

   ii. BWC must monitor and operate the tank farm containment area in accordance with its Standard Operating Procedure ("SOP"), attached hereto as Exhibit 3.

 d. Prior to discharge, BWC must inspect its stormwater for spills or leaks of MDI, methanol, and monochlorobenzene in accordance with its SOP, attached hereto as Exhibit 4.

8. Within thirty (30) days of the effective date of this Consent Decree, BWC will pay $80,000 (EIGHTY THOUSAND DOLLARS) to the Quinault Indian Nation for projects to address impairments to, and contribute to the improvement of, the water quality of the Chehalis River and Grays Harbor, as described in Exhibit 1 to this Consent Decree. The check will be made to the order of "Quinault Indian Nation" and delivered to:

 Karen Allston
 Office of Attorney General
 PO Box 613
 Taholah, WA 98587

Payment will include the following reference in a cover letter or on the check: "Consent Decree, Twin Harbors Waterkeeper v. BWC Terminals LLC, W.D. Wash. No. 3:22-cv-5233-LK." A copy of the checks and cover letters, if any, will be sent simultaneously to Twin Harbors and its counsel.

9. Within thirty (30) days of the effective date of this Consent Decree, BWC will pay $42,000 (FORTY-TWO THOUSAND) for settlement of Twin Harbors' litigation fees, expenses, and costs (including reasonable attorney and expert witness fees) by check payable and mailed to Smith & Lowney, PLLC, 2317 East John St., Seattle, WA 98112, attn: Richard Smith. BWC's

CONSENT DECREE - 5

payment will be in full and complete satisfaction of any claims Twin Harbors has or may have, either legal or equitable, and of any kind or nature whatsoever, for fees, expenses, and costs incurred in the Litigation.

10. A force majeure event is any event outside the reasonable control of BWC that causes a delay in performing tasks required by this Consent Decree that cannot be cured by due diligence. Delay in performance of a task required by this Consent Decree caused by a force majeure event is not a failure to comply with the terms of this Consent Decree, provided that BWC timely notifies Twin Harbors of the event; the steps that BWC will take to perform the task; the projected time that will be needed to complete the task; and the measures that have been taken or will be taken to prevent or minimize any impacts to stormwater quality resulting from delay in completing the task.

11. BWC will notify Twin Harbors of the occurrence of a force majeure event as soon as reasonably possible but, in any case, no later than fifteen (15) business days after BWC becomes aware of the event. In such event, the time for performance of the task will be extended for a reasonable period of time following the force majeure event.

By way of example and not limitation, force majeure events include:

    a. Acts of God, war, insurrection, or civil disturbance;

    b. Earthquakes, landslides, fire, floods;

    c. Actions or inactions of third parties over which defendant has no control;

    d. Unusually adverse weather conditions;

    e. Restraint by court order or order of public authority;

    f. Strikes;

    g. Any permit or other approval sought by BWC from a government authority to implement any of the actions required by this Consent Decree where such

        approval is not granted or is delayed, and where BWC has timely and in good faith sought the permit or approval;

    h.    Litigation, arbitration, or mediation that causes delay;

    i.    Epidemics and pandemics, including but not limited to COVID-19 related delays; and

    j.    Supply chain issues or delays.

12.    This Court retains jurisdiction over this matter while this Consent Decree remains in force. And, while this Consent Decree remains in force, this case may be reopened without filing fee so that the parties may apply to the Court for any further order that may be necessary to enforce compliance with this Consent Decree or to resolve any dispute regarding the terms or conditions of this Consent Decree. In the event of a dispute regarding implementation of, or compliance with, this Consent Decree, the parties must first attempt to resolve the dispute by meeting to discuss the dispute and any suggested measures for resolving the dispute. Such a meeting should be held as soon as practical but must be held within thirty (30) days after notice of a request for such a meeting to the other party and its counsel of record. If no resolution is reached at that meeting or within thirty (30) days of the Notice, either party may file a motion with this Court to resolve the dispute. The provisions of section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), regarding awards of costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, will apply to any proceedings seeking to enforce the terms and conditions of this Consent Decree.

13.    The parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), no consent judgment can be entered in a Clean Water Act suit in which the United States is not a party prior to forty-five (45) days following the receipt of a copy of the proposed consent judgment by the U.S. Attorney General and the Administrator of the U.S. EPA. Therefore, upon the filing of this Consent

CONSENT DECREE - 7

Decree by the parties, Twin Harbors will serve copies of it upon the Administrator of the U.S. EPA and the Attorney General.

14. This Consent Decree will take effect upon entry by this Court. It terminates after the later of the completion of BWC's obligations under paragraph 7.c.i. or eighteen (18) months after the effective date of the consent decree.

15. Both parties have participated in drafting this Consent Decree.

16. This Consent Decree constitutes the entire agreement between the parties. There are no other or further agreements, either written or verbal. This Consent Decree may be modified only upon a writing signed by both parties and the approval of the Court.

17. If for any reason the Court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the discretion of either party. The parties agree to continue negotiations in good faith to cure any objection raised by the Court to entry of this Consent Decree.

18. Notifications required by this Consent Decree must be in writing by email. For a notice or other communication regarding this Consent Decree to be valid, it must be delivered to the email addresses listed below or to any other address designated by the receiving party in a notice in accordance with this paragraph 18.

**If to Twin Harbors**:

Lee First
Sue Joerger
Twin Harbors Waterkeeper
P.O. Box 751
Cosmopolis, WA 98537
Email: suejoerger1@gmail.com, leefrider7@gmail.com

**And to**:

Richard A. Smith
Savannah Rose

CONSENT DECREE - 8

Smith & Lowney PLLC
2317 East John St.
Seattle, WA 98112
Email: richard@smithandlowney.com, savannah@smithandlowney.com

**If to BWC:**

Adam Smith
Email: asmith@bwcterminals.com

**And to:**

Beth S. Ginsberg
Veronica M. Keithley
Email: beth.ginsberg@stoel.com, veronica.keithley@stoel.com

A notice or other communication regarding this Consent Decree will be effective when received unless the notice or other communication is received after 5:00 p.m. on a business day, or on a day that is not a business day, then the notice will be deemed received at 9:00 a.m. on the next business day. A notice or other communication will be deemed to have been received upon receipt of a response by the party providing notice or other communication regarding this Consent Decree.

Dated this 30th day of May, 2023.

*Lauren King*

Lauren King
United States District Judge

CONSENT DECREE - 9